Good morning, Honors. Julie Blair, Yolanda Gutierrez-Castro. Your Honor, in this case, there is a large evidence that the participation of Barclays should not have been an error resulting in an unfair trial for Mrs. Gutierrez. In addition, her 148-1 sentence is not reasonable. And the individual mandatory is unconstitutional. Your Honor, I'd like to start by talking about the evidence that was on the forum for me, the tax evidence and the phone calls that were in self-tax houses at the time. In this case, this evidence was highly prejudicial. It was justified in front of me to imply that Mrs. Gutierrez had been authorized three other times and was not qualified as a candidate. The government contends that it is inextricably intertwined. And there's two bases that that could work. And if it doesn't work, what do you want to do? One is that it's part of the transaction. Well, the transaction here is March 6, 2007. She was charged with conspiracy. She is charged with conspiracy, which happens. Initially, she was charged with a sexual intent of conspiracy, which is that at a trial, they should receive a conspiracy charge as a way of gaining this evidence. I don't think they were entitled to do that. They were entitled to do that. But I don't think it changed the fact that now there's a conspiracy. It's still one person in a car with some unalleged undiagnosed conspiracy. It doesn't change the parameters of this case. But it's still a single person in a car with drugs in the car. And it doesn't make it complex. It doesn't make it that we now need to explain this huge conspiracy to the jury. So we need to have this evidence explained, that we need to have evidence of phone calls on three other days that have nothing to do with the actual transactions, which the actual transaction was March 6, 2007. So you're saying you're not creating this theory of conspiracy? Just creating it there without having a real basis of it? Well, the basis for the conspiracy and the jury found her guilty. I understand that. But I'm saying that she's charged with possession of a potential disturbing. When she decides to go to trial, something needs to proceed with this conspiracy. Which may then try to take back all the evidence. And then exclude the elements of the conspiracy from the jury, right? That's correct. But the normal thing in proving that it's part of the transaction, the examples that have been given in other cases are someone who sold drugs 10 times, but they're only denied it five times. And the other five are fraud because they're part of the fax transaction. There's no proof that she ever transported drugs that was not fakes. It's not part of the transaction that serves as the basis for the conviction here. The other examples that have been used are huge retail cases in which somebody, there's a murder or something that is part of the transaction because it's part of her retail conspiracy. Maybe phone calls and crossing the border happens to be as part of the March 6, 2007 occurrence. And then the other way is to say that it is necessary to explain the story. But in this case, it's not necessary. And in fact, Cruz-Guerras testified that she did, in fact, cross the border and she did talk on the phone with somebody. So bringing this evidence in, because they have explained some complex criminal schemes, it really boils down to the fact that they wanted to use it to say, hey, look, she did the same thing three other times. I bet you it's a correction part of this marriage. Or at least imply that to the jury. And that's why it's so prejudicial. And then the 404B, it doesn't have the test because it does not prove a material point to show that she talked on the phone three other times, three other days, and that she crossed the border three other days. It doesn't prove that on March 6, 2007 that she did the same thing. As far as the U.S. operandi testimony, we also contend that that was an error. This court has held on many occasions that this type of testimony is inherently prejudicial. Did you get the 28-J notice from the government? I did, on Wednesday. What was your response to the case cited in the 28 United States Doses that he alluded to? Well, Your Honor, I would say that it's a family-specific case and this is a drug case. I would also contend that there's a salubrious case that contradicts that opinion. I mean, Vallejo is, I know Vallejo didn't have a conspiracy charge, but it's basically the same thing. That it's a simple case with one person in a car that has drugs in the car, then they bring in this expert to say, well, this is how people in drug organizations act. And therefore, she was acting this way and therefore, she used ability. If you look at some of the cases like Lynn, in which there's two people on a plane, this court has said that's not complex. It's two people on a plane, one person's carrying the drugs, the other person's with them. Is there a difference between drug profile evidence and drug and motive evidence? Well, I think it's part of the same thing because in this case, what you testify to is the same thing that the agent testifies to in Vallejo, which is everybody in the organization has a job. Here, you scale it down to there's certain jobs called scout cars and guide cars and people who drive those cars. But to me, it's the same thing. I mean, saying that different people in the organization drove the drugs and transported the drugs and then delivered the drugs is what the agent said in Vallejo. In this case, he says, so if in fact, in this case... We have a number of cases in which we have approved the introduction of MO evidence. Right, and they're usually huge conspiracy cases. In fact, there are sites that it's 20 to 25 members of a structured criminal enterprise. Cases like that. Not cases where it's just one person in a car. In the case of Lou, the court even says, you know, he's traveling with a suitcase, which are two innocent acts, which is basically what could be said here. She's driving him with another car, which all of us have probably done, and talking on the phone with that person. Two innocent acts. Then the agent comes in and says, oh, no, those aren't innocent. Those are evidence of her guilt. In the case of Lou, the agent said, because he had a car suitcase and sent him traveling to visit a relative, those are two innocent acts. But the agent was able to come in and say, those are not innocent acts. Those are evidence, MO evidence, of how drug organizations work. And this court said that's not okay. That, you know, there's little probative value. It's not enough to offset potential pressures caused by this customer. In addition, the agent that testified wasn't even qualified to testify about this evidence. Well, why not? Well, he'd been a case agent for a couple of years. He testified that he'd been a case agent, the lead case agent on case, 15 cases total in his full career. How many cases do you have to be on before you're qualified? Well, I think more than 15. Something more than 15? We're supposed to not have this rule of law. No, Your Honor, but I think it's the judge's, but the judge did not make the correct call when he said that someone who... And said it would be an abuse of discretion. That's correct, an abuse of discretion. So how do we judge 15 cases as an abuse of discretion? Well, it's not that the... He's only been a case agent on 15 cases. Five times cocaine, and only two cases that he's never been an agent on had an unauthorized safeguard, and here he is testifying that this is how drug organizations work. That can't be enough to be qualified for a court testimony. I think you have to look at the individual facts of the case, but some of the cases that I've gotten in my briefs that the government has cited, I mean, people were talking about 20, 25 years of experience with gangs, and these people are qualified. Someone who's seen two cases with low cars and without cars cannot be qualified to say, this is how organizations work. Do you discount the training that was received before? I don't discount the training. I mean, I'm sure he got some training, but he's saying that, this is based on my experience as a case agent, and his experience as a case agent is that he's empowered two times to say this is how organizations work. Doesn't that go to the weight of his testimony as opposed to whether or not he's even qualified to give it? Well, it does go to the weight of testimony, but I still haven't had the judge abuse his discretion in allowing his exes to testify. What's the strongest case you have that supports your argument that this agent should have been disqualified for testifying? Well, I don't know if I have a case that says that he should have been disqualified. I mean, I think, in a situation like this, this court has put the district court judge in the position of the gatekeeper, but there are times when the gatekeeper abuses that discretion and lets somebody else... Well, what do we use to gauge whether or not he's abused his discretion by way of a law? What do we use to gauge that? I can't cite a case to this point. I would just say that I think it's a matter of the fact that this agent only had very limited experience, and that's the kind of expert testimony we're going to allow in our court, and I don't think that's something that we want to set as a precedent here. If I can find a case that I hold committed... Please don't believe anything we're saying.  On the sentence, it's our contention that the attorney wants something that is unreasonable. Here's a person who's never done anything wrong in her life. She's 40 years old at the time of her arrest. She's never been arrested before. She's always lawfully in the United States. She's raised three children. She has worked in her business for 10 years. She has one single conviction, and now she's serving a sentence of 131, which is 12 years. Which is two years above her mandatory minimum. That's right. That's correct, Your Honor. Yes, Your Honor. I think that the parsimony principle, and that's Indy Kimbrough and Dahl and all those cases that came out, basically said that the number one thing to look at is whether it's sufficient but not very necessary. But the parsimony principle, you decide that you have some discretion. This is what Congress has said. This is a mandatory minimum, and we're bound by it by statute. Is the parsimony principle not related to the new profit clause of the Fifth Amendment to make us then strut down congressional cases because we think the sentence is too long? Well, I mean... How do we get there? That's a long route. It may be, Your Honor. It may not be right for a decision, but I think at some point, the court's going to have to decide that. They're saying the overarching principle of all sentencing is that the sentence should be sufficient but not greater than necessary. In some of the Congressional sentencing, guidelines make political difference. Yes. In general. Right. Where we were talking about discretion is that the courts are now testifying because the guidelines are mandatory. But we're not talking about mandatory guidelines. We're talking about statutes. But the guidelines do give away several other guidelines. Yes, but we're not talking about other mandatory guidelines. Well, we don't have discretion because the district court doesn't have discretion. The district court is bound by and mandatory minimums specified by Congress. That's not necessarily a sentencing issue, Your Honor. Right, but they do have a way in the guidelines to get below the minimum mandatory. Why is that not... Why is that the only way? Why is it not the discretion of the court to say that there's other ways to get below the minimum mandatory? Because Congress has told us we can't dicker with the mandatory minimum. They set that minimum and that's what it's intended to be. So we don't have discretion to deviate from that. Well, and the problem... Oh, are you saying that because of 5K1 has the things we can that we should be able to in other areas? Is that what you're saying? I understand your argument of why you can do this with a straight face and you didn't want to. That's correct. I mean, it's not like they say that you can never ever go with what people do all the time. In fact, someone's never really situated to this point. He's getting 41 months while she's getting 148. I mean, where is the... Is it mandatory minimums as well? No, I'm talking about somebody who pleads guilty. So because she didn't plead guilty and chose to go to trial, she's getting 100 extra months? It would be hard for us. Maybe the United States could importantly have the nerve to tell Congress that they disagree with it and they're going to change the sentence in court. But I'm not sure that... Maybe. Maybe. It would be hard for them to do it. It would be hard for them to be fruitful. But it would be heading to what? The Fifth Amendment? The Fifth Amendment, maybe. Do you process the law? No. But we'd have to read it in the Fifth Amendment and use that as a constraint. It may not be the time, but... I will tell you when the time is. All right. We'll give you that slide when we get to the court and you can look at it for tomorrow. Thank you. May it please the Court show we met from the happy United States. Your Honor, I'd like to briefly respond to the point raised by Mr. Chair in his first comment. Starting with the 404B evidence. The government contends that both the text records in this case and the cell phone records were inextricably intertwined with the charge of offense. And therefore, we're admissible without importing Rule 404B. Were you involved in those cases? No, I was not. In this case, the reason that the text records and the cell phone records were inextricably intertwined, two reasons. First, that the... that both the text records and the cell phone records served as the basis for the criminal charge. Defense counsel has tried to recap this case as a one-counsel proceeding indictment, and that's simply not the case. This case didn't only involve events that happened on March 6, 2007. It was a two-counsel indictment. Count one of the superseding indictment was a conspiracy charge, and he overacts alleging Count One was a superseding indictment related to that conspiracy charge, which began prior to March 6, 2007. Is it the government's... Is it the government's theory that drugs are being transported on those violent occasions? No, the government actually did not argue that in closing... in its closing argument. But I... It wasn't argued at the other time? Well, through the... the government admitted evidence that Ms. Gutierrez Castro made trips from Colesco, California to Chino on three separate dates prior to the date of her arrest. There was nothing in the record where the government argued that there were necessarily drugs in the car on those prior trips. So it could have been a crime, right? It could have been. But it is the government's position that those prior trips were part of the alleged crime because of the conspiracy charge allegedly Count One was a superseding indictment. The second reason why those acts are inextricably intertwined is that it provides a way for the government to tell a coherent and comprehensible story. The jury cannot be expected to make its findings in a void. And if we were restricted to only talking about evidence on March 6, 2007, the jury would have no basis for realizing that the government was proving a conspiracy that began on February 27th and... and that Ms. Gutierrez-Castro took steps in regard to that conspiracy as alleged in the indictment as an overt act of traveling up to Chino and back of talking to the co-conspirator on the cell phone. And the jury would not be able to make those findings without that evidence. Secondly, I note that Ms. Gutierrez-Castro talked about the most upfront evidence in this case. In this case, the district court improperly admitted Modesto-Aranda and, as Ms. Robinson pointed out, the government submitted a 28-J letter to talk about the vehemence case. It invoked a brief anterior argument in which Ms. Gutierrez-Castro relies heavily on the Vallejo case. And it's the government's position that the Vallejo case doesn't really help Ms. Gutierrez-Castro because in Vallejo, the court excluded Modesto-Aranda evidence on the basis of relevancy because Vallejo was not even charged with anything that would link him to a larger drug smuggling organization. That simply isn't the case here. Ms. Gutierrez-Castro was charged with conspiracy. She was necessarily linked to at least other co-conspirators as part of this larger drug smuggling organization. And I would also note in this case that the district court took precaution to protect against unfair prejudice by limiting the scope of Modesto-Aranda testimony. Unlike in Vallejo where the agent testified about the processing and the packaging and all sorts of things related to the drug issues, the district court here limited the scope and only allowed the agent to testify about the use of guided vehicles and loaded vehicles. So I would also note that the agent didn't make any ties and didn't testify that in this case Ms. Gutierrez-Castro was using the guided vehicle. She only talked about the practices generally. And although defense counsel points out that there is some case law about other cases involving complex conspiracies, Mejia would then make clear that in a single defendant case without a complex conspiracy Modesto-Aranda testimony is valid. So what's your response to opposing counsel's challenge to the expertise of the agent? In this case the government responded that Agent Butler was properly qualified and that the agent served its proper gatekeeping role. Now the government is not arguing that Agent Butler was the most experienced expert. But that's not the standard. Here the district court went through an extensive court session outside of the presence of the jury and challenged and opposing counsel was allowed to challenge Agent Butler's professional experience. And the district court vetted him and then found that his professional experience would provide assistance to the jury and that he had enough professional experience to testify on this issue. And I would point out that the citations by Mr. Gutierrez-Pastro to the 15 cases where he acted as case agent and the 25 cases, those were all about cocaine. But the record makes clear that Agent Butler testified that based on his experience, cocaine trafficking organizations, marijuana, methadone, many different other types of drug trafficking organizations used similar tactics of this guy vehicle accompanying the road vehicle. So I think that the briefs filed by Mr. Gutierrez-Pastro and his experience, where you really look closely at the record, he testified that although he had 25 cases that were involving cocaine and a portion of those involved guy vehicles and road vehicles, he also said clearly that other types of drug smoking organizations used the same tactics. And I would say that the district court in this case satisfied its role because first, there was a lawyer outside of the presence of the jury before the trial and defense counsel had a chance to cross examine on his qualifications. Then, during the middle of trial, once the defense counsel had an opportunity to cross examine the witness in front of the jury. So, I do think that the district court, by limiting the agent's testimony only to that notice out loud of testimony relating to guy vehicles and road vehicles, and then by fulfilling the agency of the district court to the extent that he was qualified to testify as an expert and that the district court did not use discretion guidelines to do so. I'd also like to briefly touch on the fact that  district court did not use discretion guidelines to do so. And then, he went through a very detailed consideration of 3553A factors and it spans 10 pages in the transcript. And he went through all of those factors prior to submitting this act. And importantly, he gave a sentence that was below the applicable guidelines, 40 months below, nearly three years off in terms of the variance. And the reasons that he gave for that were in part under his discretion. And I think that the fact that the district court went through that analysis is key. I would also just like to briefly respond. I know that Mr. Gutierrez brought up a recent decision by this  in relation to the guidelines. And this court found that the sentence was unreasonable because it didn't account for the fact that it was based on a sentencing enhancement within the guidelines that was very very old. Exactly. And in that case, admittedly, the court found that an individualized analysis was more appropriate and the district court needed to look at the individual characteristics of the defendant. Here, the district court did exactly that. And the district court went through the personal characteristics under 3533A and based on those, gave a sentence that was 40 months below the law of the guidelines. Another disputed question. I thought the defense counsel indicated that she acknowledged that she had crossed the border before and that she had a cell phone and she got from the cell phone. So was that really a disputed issue? Well, she testified after the government had introduced the police guidelines. Right. Okay. So the fact that she had a cell phone, the fact that she crossed the border before was not, I guess, she probably had been at that point because the government had already produced evidence of that. She did testify after the government had introduced the police guidelines. Okay. All right. Thank you, Counselor. Thank you. You're welcome. Thank you, Your Honor. Just briefly, as regards to media limitation, I don't think that's a problem for all court cases. There's many, many cases that this court decided that this kind of evidence is not appropriate. And I don't think media limitation can overrule those cases. As far as the expertise, I think it was only 15 cases in five that he did with cocaine. And he did testify that other drugs smugglers use similar tactics. We also said other organizations use other tactics. He had no idea what organizations were using in this case. So, as far as the sentencing, the factors that were considered, I don't think the judge adequately addressed sentencing disparity issues or fully looked at what her background was like. As far as disparity, I mean, his concern was that we have to deter people from committing these crimes. However, people who did exactly the things she did but don't go to trial are serving sentences of 41 months and every court thinks that that's enough to deter them. So, how is 148 months of reasonable sentence going to deter them? But, she presumably could have gone and tried to deal with that. I mean, basically, it's 100 months before going to trial. But, that's within the guidelines. If you don't go to the government and you plead, that's a benefit of plea bargaining. But, of course, these guidelines are mandatory of 120 and based on the fact of sentencing disparity and the fact that it's difficult to say that the division of court could use this discretion reasonably in disagreeing with that approach. Right, but it's similar to what happened in this recent case of Amos Puma. I mean, it's the same thing where this was a within guidelines sentence, but the court found that this was not, the characteristics of the individual were not adequately taken into account as well as the list down list of the prior. And I don't think that the judge here adequately took her characteristics into account. Thank you. Thank you.
judges: Rawlinson, Bybee, Beistline